# IN THE SUPERIOR COURT FOR THE STATE OF DELAWARE

LAMARK MEDIA GROUP,  )
LLC,  )
   )
      Plaintiff,  )
   )   **C.A. No. N24C-08-153 CEB**
v.  )
   )
MPUSA, LLC,  )
      Defendant.  )
   )
   )

Submitted: September 3, 2025
Decided: October 17, 2025

## MEMORANDUM OPINION

*Upon Consideration of Plaintiff's Motion to Dismiss;*
**DENIED.**

*Upon Consideration of Defendant's Motion to Amend;*
**GRANTED.**

Damien N. Tancredi Esq., FLASTER GREENBERG, PC, Wilmington, Delaware. *Attorney for Plaintiff.*

Geoffrey G. Grivner Esq., BUCHANAN, INGERSOLL & ROONEY, PC, Wilmington, Delaware. *Attorney for Defendant.*

**Butler, R.J.**

Lamark Media Group, LLC ("Lamark" or "Plaintiff") has filed suit in Superior Court alleging that Defendant MPUSA, LLC ("MPUSA" or "Defendant") owes it money.  MPUSA filed an Answer to the Complaint and along with it, a counterclaim against Lamark alleging breach of contract and breach of the covenant of good faith and fair dealing.

Lamark moved to dismiss the counterclaim.  After argument, MPUSA filed a proposed Amended Counterclaim, along with its arguments why the Amended Counterclaim should survive the motion to dismiss.  Lamark has filed its response to that briefing.  The Court here rules on the motion to dismiss Defendant's Amended Counterclaim.

## Background

According to the Complaint, MPUSA is a "developer and provider of cooling gears such as hats and towels, designed to provide users with more comfort while in hot and humid environments."[1]  Lamark "specializes in digital marketing and advertising programs for its clients that facilitate brand and product awareness, and consumer engagement."[2]  Lamark says it is "a full-service firm that provides

---

[1] Compl. ¶ 9.
[2] *Id.* ¶ 8.

performance-focused marketing and advertising initiatives across a variety of platforms."[3]

MPUSA sought to increase sales through the use of electronic media and, to that end, entered into a "Master Services Agreement" (the "Contract") with Lamark.[4] It appears things started off well enough, because the parties subsequently signed two "Insertion Orders" that apparently expanded the scope of services to which Lamark committed.

Alas, the honeymoon did not last. MPUSA stopped paying Lamark's invoices about six months after the second Insertion Order was signed, racking up about $300,000 in unpaid bills.[5] Lamark has filed suit for monies owed.

All of this is easy enough to digest: this is an action on a debt. The Defendant hasn't paid its bills. But Defendant's response adds a Counterclaim, alleging that Plaintiff breached the contract – thus excusing payment – and has acted in bad faith.

Plaintiff has moved to dismiss the Counterclaims. As to the breach of contract claim, it says Defendant has not identified any particular contract term that was allegedly breach.[6] As to the good faith and fair dealing claim, Plaintiff says it is

---

[3] *Id.*
[4] *Id.* ¶10; Compl., Ex. A.
[5] Compl. ¶16.
[6] Pl.'s Mot. to Dismiss, D.I. 13, ¶7 (hereinafter Pl.'s MTD).

merely a repetition of the breach of contract claim and that is an insufficient basis upon which to pin a good faith and fair dealing claim.[7]

Defendant responded to the motion. It argues that the rules require only notice pleading and it is entitled to all reasonable inferences and judged by that standard, its counterclaim survives.[8] It also proposed to amend the counterclaim to include more specificity in its allegations of breach of contract. It likewise argues that Plaintiff's breach of contract had catastrophic effects on Defendant's business.[9] Therefore, it argues the bad faith claim must be allowed to proceed.

**Analysis**

1. The Amended Counterclaim adequately states a claim for breach of contract.

Plaintiff's Complaint is simply stated as a debt action on invoices not paid. Defendant's Counterclaim for breach of contract must necessarily dig into the contract between the parties to explain what the Plaintiff did that breached the agreement.

While it is certainly arguable that the original Counterclaim gave Plaintiff notice that Defendant believed Plaintiff had breached the agreement, the Amended

---

[7] Pl.'s Letter in Further Support of Mot. to Dismiss Countercls, D.I. 31, at 5.
[8] Def.'s Opp'n to Pl.'s Mot. to Dismiss Countercls, D.I. 17, ¶¶4-5.
[9] *Id.* ¶6.

Counterclaim states explicitly that Plaintiff failed to exert "reasonable best efforts" on Defendant's behalf. This term, "reasonable best efforts," appears to be the metric by which Plaintiff's performance under the contract would be judged and, one might reasonably expect that the term will be at the center of this dispute should it proceed to trial. Defendant has cited to Delaware cases that have allowed the breach of a "reasonable best efforts" standard to support a breach of contract case.[10] It therefore follows that Defendant has placed Plaintiff on adequate notice of its complaint and the motion to dismiss the counterclaim on breach of contract grounds cannot be granted.

2. The Counterclaim alleging breach of the covenant of good faith and fair dealing will not be dismissed at this stage.

Plaintiff's motion to dismiss the good faith and fair dealing claim, like Defendant's claim itself, is sparse. Plaintiff says "where, as here, the express terms of the contract at issue contradict the allegations, the claim for breach of the implied covenant fails."[11] The argument presumes that the express terms of the contract do contradict Defendant's allegations, but that is not necessarily true.

---

[10] *E.g.*, *Williams Cos., Inc. v. Energy Transfer Equity, L.P.,* 2016 WL 3576682 (Del. Ch. June 24, 2016), aff'd, 159 A.3d 264 (Del. 2017); *WaveDivision Holdings, LLC v. Millennium Digital Media Systems*, LLC, 2010 WL 3706624, at *17-18 (Del. Ch. Sept. 17, 2010); *Hexion Specialty Chemicals, Inc. v. Huntsman Corp.*, 965 A.2d 715, 748-50 (Del. Ch. 2008).
[11] Pl.'s MTD ¶10.

The Court agrees that bad faith claims are frequently alleged but rarely survive discovery and remain for trial. As the Supreme Court has said:

> The implied covenant, however, is a "cautious enterprise." As we have reinforced on many occasions, it is "a limited and extraordinary legal remedy" and "not an equitable remedy for rebalancing economic interests that could have been anticipated." It cannot be invoked "when the contract addresses the conduct at issue."[12]

But those comments came in reviewing a voluminous record in a case that went to trial. Here, the allegations are only that: allegations. The Court is duty bound to allow the pleader to take discovery and to adjudicate the viability of the allegations against a more fulsome record.

### 3. Defendant's Motion to Amend the Counterclaim is Granted.

Plaintiff's opposition to Defendant's motion to amend the Counterclaim is that the proposed amended is futile.

The purpose of the amendment was to respond to Plaintiff's complaint that the initial counterclaim did not cite to any specific contract language that was allegedly breached. The amendment did that, as well as fleshing out more detail about its complaint. Plaintiff's opposition to amendment seeks to argue the merits of these additional allegations but loses sight of the fact that these are bare, initial pleadings, merely putting the parties on notice of the claim. There will be time and

---

[12] *Glaxo Group Limited v. DRIT LP*, 248 A.3d 911, 920 (Del. 2021).

space enough to argue the more technical terms of the agreement after discovery has been taken and the parties can cite to a record for support.  For now, the Court will permit the amendment to the counterclaim.

Plaintiff's Motion to Dismiss is **DENIED**

Defendant's Motion to Amend the Counterclaim is **GRANTED**.


**IT IS SO ORDERED.**


**/s/ Charles E. Butler**
Charles E. Butler, Resident Judge